May it please the Court, in this appeal, the big problem that we have is the law that was applied by the District Court. The District Court applied the Crawford decision. It's not retroactive and it's gone. And I think on that basis, the judgment has to be reversed. And I think the question is whether this Court can go beyond that and, in fact, direct the District Court to actually issue an order. But there's a minor, minor, major, I don't know, depending on which side you're on, problem with procedural default here. Your Honor, I think the District Court was correct on the procedural default rule. It wasn't correct in saying that the entire burden was on the State, as I understand it, as to the adequacy of the procedural bar. I mean, here you – the – there was – as I understand, Bennett, there is an obligation on the Petitioner to at least say that the bar wasn't adequate, which he didn't do. I think that Bennett doesn't answer a lot of questions. Bennett – the opinion in Bennett suggests one way a Petitioner may discharge this obligation of placing it at issue is to do these things, is to – and it refers to citing authorities and citing specific – No, I understand that. But suppose all he had to do was say, I don't think it's adequate. He didn't say that. Did he? He did not, Your Honor. But I think that what we have is the District Court wasn't blind to Bennett. District Court cited Bennett. And what we have is we have an implied finding by the District Court that the issue could go forward. And I think that it's Respondent's burden here to show that that was somehow an abuse of discretion. I think we have an implied finding based on the District Court reviewing everything that this pro se Petitioner filed, the – everything that was in furtherance of getting to the merits. The District Court said this matters at issue. We're going to proceed. I understand. But you haven't given us any reason why he was right about that. Well, like I said, I think that the District Court – I think what we have is an implied finding that the matter was at issue based on the totality of matters filed by the pro se Petitioner. And I think to hold otherwise is going to turn Bennett on its head and it's going to say that the – Let me back you up just a few steps. Okay. Is it clear that the State actually raised procedural default in its answer? Yes. In the District Court? Yes. Okay. Where in the – in its pleadings does it raise procedural default? In its answer. Can you point me to the answer where it raises procedural default? I can't point you to it. It's not in the answer. It's in the – Points and authorities that are attached to it. Right. If it's there at all. Right. Okay. Do you have the points and authorities? I don't have – Maybe the AG has. Do you have them there? You didn't bring them. Okay. Well, the first place it arises is on page 17 of the points and authorities about lines 19 through 25. And what the – the attorney who wrote this said, to begin with, as observed by the State court, Petitioner did not raise the confrontation clause argument in the trial court, and he did not argue for the exclusion of this evidence as to the homicide charges. Petitioner argued only with regard to the false imprisonment charge that this evidence should be excluded because defense counsel did not have the opportunity to cross-examine Caroline. Since Petitioner was acquitted of the false imprisonment charge, the issue was not properly before this Court. And then it comes up again on page 19. However, the lines 5 through 11, I won't read them all, but however, as with his argument at the confrontation clause, this argument was not presented to the trial court. Now, he may have been – the State's attorney may have been noting that there was a failure to object, but does this – was this sufficient to alert the Petitioner that the State was raising procedural bar, the simultaneous objection rule that's invoked at the district court level when the State says it's in a – you know, that State – I think it alludes to procedural bar. I would agree with that. I would agree with that. But I think that for the – this Court to apply the rule that Respondent is saying is going to undermine Bennett, which is that it's – Well, you see, if the Petitioner – once the Petitioner is alerted that procedural bar is an affirmative defense, then Bennett kicks in. And he has to say something under Bennett. In King, which comes after Bennett, King gives him – gives the Petitioner a little considerable leeway because we had a prior case dealing with the delay rule, I think it is, California's delay – or timeliness rule, where we said all he – all he had to do was just object. Virtually had nothing to – he didn't have to do much of anything in King. But so my question here is, really, I mean, what – you know, a pro se Petitioner who reads this, would he understand that he needed to resort to Bennett and to assert his rights or assert – you know, say something about procedural bar? I don't think that Bennett is that crystal clear. Bennett – Bennett, as signed, is very clear that the ultimate burden is on the party alleging the affirmative defense. And I don't think Bennett is that clear to a pro se Petitioner. But at that point, given the murkiness of all this, wouldn't it have made more sense in a district court – might it make more sense now to simply send it back and say, give the State the chance now to demonstrate whatever it needs to demonstrate? In my view, we don't need to go there. In my view, there are – there is an implied finding by the district court that the matter was placed at issue by this pro se Petitioner. Placing – but I don't think that that – under our law, that's just not enough. Once you say that they – that the State has properly raised procedural bar, Petitioner has to say something. And here he didn't say anything. I think what – you know, what is placing something at issue is not – is not a concession. It looked to me, when I read – I was trying to understand what the magistrate judge was doing. And when I tracked back the answer, the points and authorities, it looked to me what the – he essentially determined that procedural bar just really wasn't an issue because it hadn't been properly raised. It was raised in a conclusory fashion. Right. That's what he said. It was raised in a conclusory – it was raised in a conclusory fashion. And that the ultimate burden was not satisfied. But it was also – I mean, the reason this is a hard case is because it was discussed at – I mean, at least the procedural problem was – or the waiver was discussed in the court of appeals' opinion and was part of the reason for the decision. So it's not like this came out of left field in any fashion at all. Now, of course, you have a pro se plaintiff, and he may not have been aware of any of this, but that's just, you know, a whole problem we have with, you know, how much leeway do we give to pro se plaintiffs. And – but Bennett was a pro se plaintiff, too, as I recall, and it did place some kind of an obligation. It is unclear what level of burden, what the standard is. Well, the standard is more than zero. I mean, as Judge Pius says, if you think this issue was flagged, then they had to do something, even if the something was to say nothing other than this was not an adequate grant. But he didn't say that. And it does seem somewhat procedurally unfair to fault the State for not having come forward with what's usually a major research project in terms of the application of this rule if no one's asking them about it. Well, I don't think – I think that the district court could look at the totality of what the petitioner filed and can say that the petitioner, in pursuing the merits of the appeal, is not conceding, is not conceding this issue of procedural default. And that's sufficient. That's sufficient to go forward. I think it is – Bennett doesn't specify it, but Bennett leans in favor of the pro se petitioner. And I think it is a very minimal requirement. And to turn it into more, I think risks turning that on its head, going against precisely what Bennett said, which is that it's not the pro se's ability to come forward with these things. Well, when you read Bennett and King together, it looks like the King panel seemed to recognize that Bennett really was – the panel thought that they were making it easier for the petitioner. But in fact, it turned out to be a little bit more difficult. And they tried to, at least in the unique circumstances in King, to deal with that by just saying in those circumstances where we had already had a rule, all he had to do was object or he just had to note it or something. It took very little. But we don't – you know, even here, we don't have anything from the petitioner. And I was just trying to understand. I mean, I – you know, maybe this is sufficient. I don't know. I'm just trying to understand what the magistrate judge did. That's all. I think the question is what – I mean, what does it mean to place something at issue? And you have a petitioner that is pursuing the merits of the claim and an implied finding by the district court that it's placed at issue. This guy has not conceded defeat on this procedural default issue. Would you like to save the balance of your time? I would, Your Honor. Thank you. Very good. I understand what the Court is saying. I'm sorry. Before we get to the procedural bar, okay. I'm sorry. Do you agree that if we got over the procedural bar, the case has to go back under O'Hire v. Robertson? I'm sorry. I can't hear you. That if we got over the procedural bar, the case would have to go back. On the procedural bar? No, on the Confrontation Clause question, because it was decided on the basis of the wrong law. If you get over procedural bar. I'm just trying to figure out whether we're in the same place. I believe this Court can look at it. The applicable law was O'Hire v. Roberts. Right. The court, the district court, was clearly applied the wrong law. Right. I don't know that it has to go back to this Court. I was under the impression this Court could just rule that, indeed, the state court decision involved a reasonable application of O'Hire v. Roberts. Do you think we could decide ourselves? I do believe you can. I can have something to, a decision below on the issue. Okay. I'm sorry. If you remand it, then, I would ask that this Court certainly remand it on both issues. If the procedural default in this case drove everything in this case. Well, it's not clear to me that it drove everything in this case, because if it did, you know, the State's very good about raising all these little defenses when they think they're appropriate. And they raise them clearly. No, I understand. All right? And if you look at the answer in this case, which was filed under the Federal Rules of, you know, habeas corpus, supplemental rules dealing with habeas corpus, it says, you know, you file an answer and you raise these affirmative defenses. No, I understand. And you look at the answer, you know, to the extent it has any meaning, and there's nothing about procedural bar. I understand. You have to go to the points and authorities, page 17, lines, whatever they are, and you have to read it and you have to understand that what that meant was the State was raising procedural bar. I understand. I believe there's two different issues. When I said it's all driven by the procedural bar, I'm talking about something else. The – I agree with – I hear what you're saying. The entire case, though, we had – we did state in totality the State court ruling, which involved – certainly involved contemporaneous objectionable. That was the large part of the State court's decision. They decided then in the alternative on the merits. We then also made the statements that you referred to. I understand what you're saying. I understand your concern. What I'm saying is if you remand it back on the other issue, please remand it back on that. There is a strong procedural bar. There's nothing – probably one of the most well-respected, well-applied, you know, adequate, independent bars is contemporaneous objection. And when I said that the entire case was driven by it, what I was referring to was it – the lack of an objection as to the murder count on this claim – on this statement is what colored the entire ruling and all of that went on. Well, that – I mean, that's sort of peculiar because, in fact, there was an extensive discussion. I mean, the reason that you require objections is so that the court can rule on it. Well, in fact, the court raised it itself and went on at some length about whether or not the evidence was pertinent to the murder trial. So it's not like anybody forgot about it. To the extent that it was discussed as to the murder trial, it was discussed in terms of the state-of-mind issue, which would be non-hearsay usage. It was never discussed in terms of concerns about it being admitted as hearsay as to the murder count, in other words, truth of the matter. And the reason for that is because the defense counsel knew that a statement was coming in through the daughter that she was going to testify that she was present at the June 12th event. And she testified that he told her that he would kill Carolyn, her mother and his wife, rather than let her be with another man. That was the tattoo. They had found the tattoo. He had found the tattoo. He was angry. That's the June 12th incident. She also testified at trial that he always threatened to kill her mother. And also the defense counsel knew, and those are at RT, by the way, 197 and 199. The defense counsel also knew that his own expert was going to have testimony elicited from him by defense counsel that, and this would have been a non-hearsay, obviously, for the basis of an expert's opinion, but he also then elicited information that the expert had consulted a police report from June 12th that contained the statement, I'll kill you or I'll do three years, the very statement, again, that we're concerned about. In addition, of course, in reading the trial transcript, I'm sure you saw, this was an overwhelming case of premeditation and deliberation. He chased her out. He broke off. He went back into the house. He got another knife. He chased her out. As her young son's trying to ---- He wasn't convicted at first degree anyway, was he? Yes, he was. Was he? Yes. As he's leading, his young son is leading him away from the crime scene. He chases her down, straddles her, listens to see if she's still breathing, stabs her some more until he stabs her 30 times. I mean, so this is a brutal crime involving obvious premeditation and deliberation. The very statements we're concerned about came in through other witnesses. There was absolutely ---- because of all that, defense counsel knew there was no point in an objection. There's no point in asking for limiting instruction. Now ---- Let me ask you this. Do you think this is sufficient to raise the statement on page 17 of the points in authorities? I mean, is it? I ---- To a pro se Petitioner. I don't ---- To understand the technicalities of procedural law. I understand. Is that your position that this is adequate? I totally understand the Court's concern. I think it could have been done, certainly been done clearer. There are, though, I do believe that it was sufficient in the sense that we clearly stated what the State court's opinion was. It was clearly based on contemporaneous objection. And I believe that, as I said, I don't ---- there's no case law that I could find. I obviously ---- I also was concerned about why the district court had done that. And in reviewing this, I also considered this issue. I don't find case law, though, that shows us, you know, that says the State must go this far in asserting the bar. I do think that we asserted the bar. The real problem is ---- yeah, I mean, the magic words wouldn't be a problem if this had been in the answer, which is where it should have been. I mean, but it wasn't there. And that makes it more difficult. I do believe it was in the answer. I do believe it could have been stated clearer. It's not in the answer. It's certainly not in the answer. You're talking about in the ---- oh, in the points and authorities attached to the answer. Yeah. In the points and authorities, something is clear. Yes. But it's not in the answer. But I don't know that that was the problem that the magistrate judge had. I was under the impression ---- I still am under the impression that she misunderstood Bennett. But in terms of applying Bennett, don't you think that if we're going to be punctilious about what the Petitioner does, we might be punctilious about what the Respondent does as well, which is to raise the affirmative defenses in the answer, which didn't happen? If I think that ---- like I say, I still believe there isn't a case law that says what we have to do at this point. We did assert it in the points and authorities. I understand. I definitely hear what the Court is saying. And if the Court is inclined to go that way, I would ask that it be remanded on this issue so that the ---- because the contemporary inaneus objection rule was such a big issue in this case and is such a strong procedural default for this State. I mean, there is something disturbing about these cases in which ---- I mean, that would make a lot of sense. But it would also make a lot of sense if somebody says my problem is that I don't get to cross-examine to say, well, that's enough to raise a confrontation clause issue. But your argument is that it isn't. It is not under the State contemporary inaneus objection rule. That is not enough. And like I say, as to the murder count, he wasn't concerned about cross ---- when he says I'm concerned about my cross-examination rights, the reason that what he's speaking to is he's concerned about it in the context of the false imprisonment charge because her statements are the only evidence that came in on that. And ultimately, he was acquitted on the false imprisonment charges. So they're all moot as to that. What he wanted to do was knock out the, you know, the duress and all that that went with the false imprisonment charge. As to the murder count, he had no concern. And that's demonstrated in the way he framed his question or the way he framed his objection and the failure to request a limiting instruction. He knew it was coming in other ways. And it was ---- that's not true as to the false imprisonment charge. The false imprisonment charge, this is the only evidence on it. And ultimately, that count went down. Is there any? Kennedy. Why would he choose to do that? If he's concerned about this statement being part of the trial, why would he limit it just to the false imprisonment where he can be convicted of murder? I believe that he just thought that he could not ---- he wanted to keep it out. He wasn't thinking of it in terms of the murder count being admitted for the truth of the matter. He was thinking of it in terms of his state of mind. What he was trying to do was keep it out for the truth of the matter on the hearsay ground. And I ---- and the only place that in their ---- in the course of the discussion at that point that that came up was in the context of the false imprisonment charge. I just can't imagine a defendant, even a pro se defendant, concerned about it for false imprisonment, which has a minor sentence, and not be concerned about it for these statements about he'll kill me and so forth for a murder charge. I'm just saying it was coming in other ways as to the murder charge. She ---- the daughter who testifies to the statement that when their daughter testifies he said he would kill Carolyn rather than let her be with another man, that statement doesn't go to the ---- so much to the false imprisonment. I think he knew he couldn't stop it with regard to the murder charge. It was coming in. How did he know that? Well, I mean, I'm sure he knew what witnesses ---- I'm sure he had seen discovery from the prosecution. I mean, I'm speculating, but I'm sure that he had seen prosecution discovery that stated what the witness would be testifying to. You think he's thinking all this through when he doesn't want that statement in? You can see very clearly, though, how he tailors his ---- I mean, this isn't an error. This is by him. I don't believe. He's trying to do ---- to minimize the damage to his client. And the only where ---- the only place that he has any ability to stop this statement from coming in is ---- and the one he has the most potential for benefiting with is as to the false imprisonment charge. And that's what he targets. He objects to the admission of this statement as to the false imprisonment charge. He's very specific about what he does. He knows that he's facing a murder charge. He could have easily done that, but there's no point because all this other evidence is going to come in. The only other thing is to go back to my first question. You didn't actually brief the merits of the Ohio v. Roberts questions in your brief, did you? I'm sure we did in our appellee brief. Yes, I'm sure we did. I don't remember. The entire ---- our entire opposition was based on the idea that this was post ---- that Crawford didn't apply to this case and this was in Ohio. The problem here is that the district court just had the, I mean, just came in that little window. Yes. It wasn't, that wasn't an error on their part at all. That was, that was, they were following what they thought was the best law at the time. The situation changed, of course. Thank you. Thank you. In response, Your Honor, Your Honors, the, the theory that somehow the defense attorney intended not to expand this objection, this is the first time we've ever heard it. It's, it's not in, we know it's not in their answer, it's not in their points of authorities, it was nowhere. It's not in their brief that they filed with this court. So if, if this court, if the court's going to reverse this and I think that it ought to go back, we ought to have another chance at, at this procedural default issue. And I, I do think that in the context in which the objection was made, the actual trial court in its discussion expanded the objection and it was discussed that, that this evidence can pertain to the murder, murder charges. The court specifically mentioned that this would have bearing on his state of mind three or four days later at the time of the murder. So in, in essence, the- But after he raised that, the defense lawyer never says anything. Well, I, I think that the, at that point, the discussion was opened, was opened  by the defense lawyer. And the defense lawyer never says a word about it. I, I think it's- The defense, he never, although he had, had been quite vociferous in arguing about, not on hearsay grounds, which he basically said in passing, but on, on prejudice grounds, on, on the false imprisonment, on, on the, he doesn't, once the judge raises the, the murder thing, it goes on for a couple, several pages between the court and Ms. Jalares, but the defense lawyer didn't say a word. I, I suppose that, I mean, at that point, the court had already considered, had already considered the issue. The court had brought up the issue itself, and I think it was, it's sufficient to preserve the, the objection. Ordinarily, if somebody, if a judge says something and you disagree with it, you say something. Well, but the judge, the judge specifically recognized that that evidence would, would have bearing and would affect the state of mind at the time of the murder. So that's, at that point, that the court was recognizing that, that, that this evidence did play into the murder count, that it wasn't going to be limited just to the detention count. Okay. Thank you. Okay. Thank you. Thank you for your arguments. The matter will be submitted.
judges: Hug, Paez, Berzon